41 F.3d 1507
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
D.W. RILEY, Petitioner,
v.
PITTSBURGH & MIDWAY COAL MINING COMPANY; Director, Office
of Workers' Compensation Programs, United States
Department of Labor, Respondents.
 No. 93-4226.
 United States Court of Appeals, Sixth Circuit.
 Nov. 9, 1994.
 
 Before: KEITH, WELLFORD, and DAUGHTREY, Circuit Judges.
 PER CURIAM.
 
 
 1
 There is little factual dispute in this black lung controversy. Most of the differences between the two parties relate to the interpretation to be given the evidence and the various medical opinions concerning the claimed pneumoconiosis and disability of D.W. Riley, the petitioner. We AFFIRM the February 20, 1992 decision of Administrative Law Judge ("ALJ") Richard E. Huddleston denying benefits and the affirming decision of the Benefits Review Board ("the Board"). See BRB No. 92-1231 BLA, at 2 (Sept. 22, 1993) (unpublished) (holding that "substantial evidence supports the denial of benefits").
 
 
 2
 Riley, born in 1926, filed this black lung claim in December, 1986. The claim was initially denied by the deputy commissioner of the Office of Workers' Compensation Programs. On appeal, the ALJ, in a February, 1989 order, awarded benefits after discounting or disregarding the opinion of several examining physicians. See Decision and Order, 88-BLA-00883 (Feb. 10, 1989). On June 23, 1991, a unanimous Board affirmed in part and vacated in part that decision, remanding "for further proceedings consistent with th[e] opinion." See BRB No. 89-0954 BLA (June 25, 1991) (unpublished). Although the Board found error in several aspects of the ALJ's evaluating process, it did not find these errors determinative and deemed the opinions relied upon by the ALJ as "reasoned medical opinions." Id. at 4.
 
 
 3
 The Board correctly concluded that a finding of total disability due to pneumoconiosis, pursuant to 20 C.F.R. Sec. 718.204(b) and (c), requires the ALJ "to consider whether [the] claimant could perform gainful work comparable to his usual coal mine employment." Id. at 5. The Board vacated the ALJ's decision to grant benefits and instructed the ALJ to identify on remand "the employment that was claimant's usual coal mine employment" (i.e., security guard, warehouse clerk or exploration driller. Id. In addition, the Board directed the ALJ to determine on remand "whether the physicians ... properly considered the exertional requirements of claimant's usual coal mine employment."[1] Id.
 
 
 4
 We believe, as apparently did the ALJ, that the remand required the ALJ to re-examine and re-evaluate the usual requirements of Riley's coal mining job as of 1986, together with his age, education, and work experience, see supra note 1, when reviewing the medical opinions about whether Riley proved that he was totally disabled due to pneumoconiosis.
 
 
 5
 The parties stipulated that Riley has twenty years of coal mine employment. There were two x-ray studies done in 1981, and two in 1983, none of which reflected pneumoconiosis. There were eight studies done in 1985, a majority of which reflected findings of some degree of pneumoconiosis or compatibility with pneumoconiosis. In 1986 and 1987, however, the majority of x-ray readings were negative.[2] The ALJ's findings showed no valid or reliable pulmonary function study that indicated a pulmonary disorder. According to the ALJ, of all the examining physicians, only Dr. Gallo and Dr. Simpao examined blood gas studies and neither found a basis for a respiratory disability determination. The ALJ concluded, after analyzing divergent medical opinions, that Riley was entitled to a presumption of total disability and that the coal mine employer-respondent had not rebutted that presumption.
 
 
 6
 Riley suffered a heart attack in 1980. After treatment, he returned to lighter work for several years as a security guard with respondent. It is undisputed that Riley suffers from arteriosclerotic heart disease, was a regular smoker for many years, suffers from shortness of breath, and took voluntary early retirement in the fall of 1985. Until that time, he worked for the respondent regularly for several years as a warehouse clerk.
 
 
 7
 On remand, the ALJ stated that he was "to reconsider the medical opinions relevant to [Sec. 718.204(c)(4) ]," and that the Board had "affirmed, as unchallenged, my findings that total disability is not established pursuant to Sec. 718.204(c)(1), (c)(2), or (c)(3)." See Decision and Order, 88-BLA-00883, at 2 (Feb. 26, 1992). We believe the ALJ correctly stated the basis for the remand. On remand, the ALJ determined, based upon Falcon Coal Co. v. Clemons, 873 F.2d 916 (6th Cir.1989), that Riley's work for five years "as a security guard and as a warehouse clerk[3] do[es] not meet the requisite function test [as coal mine employment], in that he was not sufficiently involved in the extraction or preparation of the coal." Id. at 3. Thus, his coal mine employment, as such, lasted for fifteen years and terminated in 1980.
 
 
 8
 Riley attended college for a time, and performed office and computer-type work for the last several years of his employment with respondent. In late 1984, Riley became a Madisonville, Kentucky city council member and continued to work at that job until at least June of 1988; his term extended to 1989 or 1990. He was paid $5,000 annually. Riley conceded that his last five years of work with respondent consisted of lighter duty and was in accord with his doctor's recommendations. He was paid by respondent through the end of October, 1985, and sometimes worked six and seven days a week in order to "make as much money ... equal [to] what [he] had been making in [his] other status [as a driller and security guard]." The ALJ found that until 1980, Riley's "usual coal mine employment was [as a driller] ... done aboveground at a strip mine." See Decision and Order, 88-BLA-00883, at 3.
 
 
 9
 "[I]n determining whether a claimant has established total disability under Sec. 718.204," the ALJ believed, and we think correctly, that the remand "refer[ed] to all evidence (medical and otherwise) which is contrary and probative."[4] Id. On reconsideration, the ALJ considered two physicians' opinions, Drs. Calhoun and West, which found Riley disabled for coal mining "or similar work," or "from performing heavy manual labor." Id. at 4 (emphasis added). In 1987, another doctor, Dr. Simpao, "found only a moderate impairment." Id.
 
 
 10
 Contrary to these opinions were pulmonary function studies and blood gas tests. The ALJ made reference to Dr. James A. Clarke's 1982 report following the heart attack, but the ALJ did not note that Dr. Clarke found Riley then capable of "occupation duties ... such as one might encounter in carpentry, plowing, paper hanging, painting [and] using a wheelbarrow." In fact, Riley did continue for more than three years to perform comparable occupational duties for respondent, despite his heart problem and breathing difficulty. The ALJ observed on remand that in 1986 Dr. Anderson, a pulmonary specialist, attributed any evidence of disability to heart disease, and so did Dr. Gallo, who was also a pulmonary specialist.
 
 
 11
 Upon review and reconsideration on remand, the ALJ decided to accord less weight to Dr. Calhoun's 1985 opinion because of his failure to explain or support "his conclusion[s] of total disability." See Decision and Order, 88-BLA-00883, at 5. The ALJ stated that "no objective tests were performed ... [and] he completely ignores any effect [Riley's heart problems] may have on his condition." Id. On remand, the ALJ also noted that Dr. West, like Dr. Calhoun, had "[n]o training in pulmonary disease ... [and] fail[ed] to explain how his findings support the conclusion of total disability." Id. (emphasis added). The ALJ concluded that Dr. Simpao's opinion was unsupported by objective tests and "is inconsistent with a finding of total disability." Id. at 6.
 
 
 12
 In summary, the ALJ reweighed and re-evaluated the medical opinions with regard to Riley's total respiratory disability. He relied upon Drs. Calhoun, West and Simpao rather than Drs. Anderson and Gallo to find that Riley suffered from pneumoconiosis arising from coal mine employment. The remand specifically instructed the ALJ to reconsider and revisit the issue of total disability due to pneumoconiosis. On remand, after studying all the relevant evidence, including Riley's testimony, the ALJ found "that total disability due to pulmonary disease [or pneumoconiosis] has not been established." Id.
 
 
 13
 Despite some contradiction with the ALJ's original findings, the Board affirmed his decision on remand.[5] We find substantial evidence to support both the ALJ and the Board's decisions to deny benefits. Despite his respiratory problem through 1985 and thereafter, Riley remained capable of performing less heavy work of various natures with respondent and with the City of Madisonville. Riley has not demonstrated total disability due to coal mining activity.
 
 
 14
 We accordingly AFFIRM the decisions below.
 
 WELLFORD, Circuit Judge, concurring:
 
 15
 I agree with the majority that we should affirm the decisions of the administrative law judge ("ALJ") and the Board denying benefits in this case.
 
 
 16
 I would go further, however, and conclude on this record that there was not substantial evidence to support a finding of pneumoconiosis as initially found by the ALJ and approved by the Board prior to the Board's remand. I find that the Board's second decision was correct in stating that "the administrative law judge rationally concluded that the opinions of Drs. Anderson and Gallo, in light of the claimant's usual coal mine employment, were better supported by the objective evidence and outweighed the remaining medical opinion evidence of record." See BRB No. 92-1231 BLA, at 2-3 n. 2 (Sept. 22, 1993) (unpublished).
 
 
 17
 It is clear that the last usual employment of claimant Riley was his five years of service as a security guard and warehouse clerk for respondent employer. Riley worked at these lighter jobs in accordance with Dr. Clarke's recommendation after completing his coal mine employment as a driller in 1980. Prior to taking early retirement following a heart attack, Riley had worked consistently and gainfully. He also apparently dropped his longstanding smoking habit after 1980. Beginning in 1984, Riley also became employed as a paid city council member. Since he worked full-time through most of 1985, it is clear that Riley was not disabled before 1986, if at all.
 
 
 18
 The ALJ made the following findings from the record:
 
 
 19
 (1) "[V]arious doctors at the [Trover] Clinic ma[d]e no references to evaluation for a respiratory or pulmonary impairment."
 
 
 20
 (2) Dr. Calhoun, relying on a work history of coal mining, which was twice as long as the ALJ found to apply (thirty years versus fifteen years), a physical examination, and a single x-ray, diagnosed pneumoconiosis.
 
 
 21
 (3) Dr. West also examined Riley at the request of his lawyer in 1985. He apparently examined the same x-ray as did Dr. Calhoun. He made no other objective studies. He stated that the claimant was "only able to do light or sedentary work." (emphasis added).
 
 
 22
 (4) Dr. Anderson "noted employment, medical and smoking histories ... [and] stated that the [c]laimant would be able to perform the job of a security guard." He diagnosed "no evidence of pneumoconiosis" in April of 1986 after doing x-ray and blood gas studies. He found Riley's only "disability [was] due to cardiovascular disease."
 
 
 23
 (5) Dr. Gallo also "noted employment, medical and smoking histories," made a physical examination, and made pulmonary function tests, a blood gas study and examined an x-ray of Riley in September of 1986. He did not believe "the [c]laimant has coal workers' pneumoconiosis." He also diagnosed heart disease.
 
 
 24
 (6) Dr. Simpao found "probable" pneumoconiosis based upon "a pulmonary function study, arterial blood gas study and chest x-ray." He also noted that Riley "could walk 375 feet without shortness of breath." He felt the "impairment [w]as moderate."
 
 
 25
 From the record, I would conclude that no substantial evidence existed to support the initial finding of pneumoconiosis for the following reasons. First, it is logical to assume that Riley made no complaints about a respiratory ailment to his treating doctors at the Trover Clinic during his employment with respondent. Second, Dr. Calhoun was a general practitioner, and as the ALJ subsequently observed, based his opinion on "no objective tests." He also ignored the effect of Riley's smoking and heart disease. Dr. Calhoun found only that the x-ray was compatible with a diagnosis of pneumoconiosis. Third, there is no evidence that Dr. West was a pulmonary specialist. He found that Riley "suffers no chest ... pain" but does have "shortness of breath." He, unlike the other doctors, noted a "normal heart shadow." He also found that the same x-ray examined by Dr. Calhoun, was "compatible with a diagnosis of coal workers' pneumoconiosis." He found a disability due to shortness of breath and also made "no objective tests."
 
 
 26
 Both Dr. Anderson and Dr. Gallo are pulmonary specialists and performed objective tests to support their opinions that no evidence of pneumoconiosis existed. Unlike Drs. Calhoun and West, Drs. Anderson and Gallo both explained fully the basis of their expert opinions.
 
 
 27
 The ALJ apparently ignored the fact that seven of the last eight x-rays of record reflected no pneumoconiosis. The ALJ concluded that there was neither a pulmonary function study nor a blood gas study that supported a finding of pneumoconiosis.
 
 
 28
 From all of this, I would conclude that there was no reasoned medical opinion supporting a finding of pneumoconiosis, nor of total disability. I would affirm based on no valid showing of pneumoconiosis, as well as no showing of total disability by reason of pulmonary disorder.
 
 
 
 [1]
 The Board also noted that "age, education and work experience are relevant to whether the claimant can perform comparable and gainful work." See BRB No. 89-0954 BLA, at 5
 
 
 [2]
 According to the ALJ's findings, six out of the seven most recent x-ray readings from April, 1986 to February, 1987, proved negative. One reading reflected "probably 1/0," a somewhat ambiguous finding, and the ALJ concluded that all of the 1986 and 1987 x-rays were "negative for pneumoconiosis."
 
 
 [3]
 Riley described his job as a warehouse clerk, as follows:
 We issued parts to mechanics and who or whomever came to the window that needed parts for some of the equipment.
 We also kept the warehouse itself clean and in shape.
 We did some computer work, some computer entry.
 And some of the parts, if they were too heavy to lift or too heavy for one man, if there was two available in the warehouse they'd be two of us get in a condition that we could pick it up with what we called a fork lift or buddy truck.
 He also said he was subject to dust "at times." He testified "I don't know," when asked whether he was capable of working full-time should he be recalled to work at the warehouse.
 
 
 [4]
 This review on remand meant to the ALJ that he "must weigh all of the relevant probative evidence together, both like and unlike evidence, with the burden of proof always on the claimant to establish total respiratory disability by a preponderance of the evidence." See Decision and Order, 88-BLA-00883, at 3-4. We find no error in this scope of review
 
 
 [5]
 We agree with the Board that "the administrative law judge rationally concluded that the opinions of Drs. Anderson and Gallo, in light of claimant's usual coal mine employment, were better supported by the objective evidence and outweighed the remaining medical opinion evidence of record." See BRB No. 92-1231 BLA, at 8-9 n. 2